UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BDE WARREN, LLC, a Michigan limited liability company,

Plaintiff,

-v-

CITY OF BERKLEY,

Defendant.

Case No. 2:22-cv-10913

Hon.

Mag.

**COMPLAINT FOR DAMAGES AND JUST COMPENSATION**

---

BUTZEL LONG, P.C.
Darius Dynkowski (P52382)
Louis F. Ronayne III (P81877)
150 West Jefferson Ave., Suite 100
Detroit, 48226
(313) 225-5313
dynkowski@butzel.com
ronayne@butzel.com
Attorneys for Plaintiff

---

Plaintiff states as follows:

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiff is a limited liability company organized under the laws of Michigan.

2. Defendant (the "City") is a municipal corporation in Oakland County, Michigan.

3. This Court has jurisdiction under 28 U.S.C. § 1331, because the claims arise under the Takings Clause of the Fifth Amendment of the United States Constitution.

4. This Court has jurisdiction over Plaintiff's state law claim under 28 U.S.C. § 1367(a), the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, and the All Writs Act, 28 U.S.C. § 1651.

5. Venue is proper in this forum under 28 U.S.C. § 1391(b)(2).

## GENERAL ALLEGATIONS

6. On December 16, 2019, pursuant to the Michigan Regulation and Taxation of Marihuana Act ("MRTMA"), MCL 333.27951 *et seq*., the City adopted its Marihuana Business Ordinance, O-15-19 (the "Marihuana Ordinance"), meaning the City had officially "opted in" to the recently legalized commercial marihuana industry.

7. Plaintiff's owners immediately began investigating sites to operate a marihuana facility in the City.

8. Because the Marihuana Ordinance "limit[s] the maximum number of licenses that the city may issue to three marihuana business locations," Section 30-807(a), the City's licensing process is highly competitive.

9. Section 30-806(c) sets forth the criteria for reviewing license applications. It states as follows:

> To evaluate applications, the city shall use a point-based system which shall be approved, and may be modified from time-to-time, by city council resolution, and shall take into account the following application evaluation criteria:
>
> (1) The content and sufficiency of the information contained in the application.
>
> (2) Whether the proposed plan has received approval from the public safety department, community development department, and all other appropriate departments.
>
> (3) Whether the proposed facility will revitalize or redevelop property that has been vacant or unused for an extended period of time.
>
> (4) Planned outreach on behalf of the proposed business, and whether the applicant or its stakeholders have made, or plan to make, significant physical improvements to the building housing the marihuana business, including plans to control traffic, noise, and odor effects on the surrounding area.
>
> (5) Whether the applicant or any of its stakeholders have a record of acts detrimental to the public health, security, safety, morals, good order, or general welfare prior to the date of the application; and whether the applicant or any of its stakeholders have ever been convicted of operating an illegal business enterprise of any kind.
>
> (6) Whether the applicant has reasonably and tangibly demonstrated it possesses adequate resources and experience to implement the submitted business plan.
>
> (7) Whether the proposed location in the city in relation to its proximity to other locations for marihuana businesses

represents a reasonable and harmonious dispersion of marihuana businesses.

(8) The proximity of the business to a school.

(9) Whether adequate off street parking is provided or available.

(10) Whether the size and nature of the use in relationship to previously approved and issued marihuana business licenses is reasonable.

(11) Whether the applicant has business experience previously in the city and demonstrates that the applicant has sufficient business experience to operate the proposed marihuana business.

(12) Whether the proposed plan incorporates sustainable infrastructure and energy efficient elements and fixtures.

(13) Whether the proposed plan incorporates infrastructure that adequately addresses stormwater drainage.

(14) Whether the proposed plan incorporates odor control systems to prevent odor dispersion to neighboring properties.

(15) Whether an applicant has applied for a co-location of equivalent licenses at one location.

(16) Other criteria as indicated important for consideration by any appropriate department of the city administration.

10. Around December 2019, the City also adopted a new zoning ordinance (the "Zoning Ordinance") concerning the allowable locations for Marihuana establishments. Ordinance Sec. 14-19.

11. Shortly after, consistent with the Zoning Ordinance, the City published a Marihuana Business Allowable Location Map, which depicts, in a "Green Zone," the permissive locations for Marihuana establishments in the City under the zoning ordinance. (**Exhibit A**, "Green Zone" map).

12. To summarize, the Green Zone in the City – according to the Zoning Ordinance and the Green Zone map – is most of Twelve Mile Road, from Greenfield Road, almost to Woodward Avenue; the northern portion of Eleven Mile Road, from Greenfield Road to just east of Coolidge Road; various parts of Coolidge Road, between Eleven Mile Road and Twelve Mile Road; and most of Woodward Avenue, between Eleven Mile Road and Twelve Mile Road. (*Id.*)

13. In reliance on the Zoning Ordinance and the published Green Zone map, Plaintiff secured an interest in property in the City at 2033 Coolidge (the "Coolidge Property") – within the Green Zone – where it

intended to operate a "dispensary" (a Marihuana facility for retail transactions).

14. Plaintiff spent significant time and money in selecting the Coolidge Property for the purpose of securing a property within the Green Zone.

15. Plaintiff also invested substantial funds in the acquisition of its interest in and development of the Coolidge Property with the distinct and reasonable expectation that the City would, at a minimum, treat it consistent with its zoning classification under the Zoning Ordinance in the license application evaluation process.

16. On or about February 4, 2020, after the City passed the Zoning Ordinance and published the Green Zone, the City, purportedly pursuant to the Marihuana Ordinance, released a point scoring matrix (the "Matrix"). (**Exhibit B**). The Matrix is an arbitrary "scoring" system implemented after the passing of the Zoning Ordinance which places a point scoring system for property attributes not contained in the Zoning Ordinance.

17. The Matrix has six pass/fail requirements, followed by several merit-based criterion with assigned values for point scoring. (*Id.*)

18. The total number of points available for any applicant under the Matrix is 315. (*Id.*)

19. Among the numerous merit-based criterion in the Matrix is a rubric that awards 19 points if the applicant's "Proposed Site is located in the following areas, as permitted by the Zoning Ordinance: Eleven Mile Road, Woodward Ave, Twelve Mile Road (Coolidge to Woodward)." (*Id.*)

20. In other words, the Matrix awards 19 points for certain properties in the Green Zone (i.e., all Eleven Mile Green Zone properties, all Woodward Green Zone properties, and the Twelve Mile properties in the easterly portion of the Green Zone), but not all properties in the Green Zone (i.e., the Coolidge properties in the Green Zone and the Twelve Mile properties in the westerly portion of the Green Zone).

21. Given that the Matrix arbitrarily displaced Plaintiff from licensure competition with the Coolidge Property by making it impossible for the Property to be eligible to receive the 19 maximum points available under the proposed site location rubric in the Matrix despite being otherwise eligible under the Zoning Ordinance.

22. Plaintiff eventually submitted a timely and comprehensive application for a provisioning center in the City.

23. Plaintiff received 0 out of the 19 points available under the proposed site location rubric in the Matrix.

24. On September 29, 2020, the City released its official final scoring results, under which Plaintiff received 278 out of 315 points – not enough to apply for site plan review or otherwise secure a license as the matrix had made Plaintiff's site impossible to receive a license. (**Exhibit C**).

## COUNT I
## DE FACTO TAKING/INVERSE CONDEMNATION

25. Plaintiff incorporates each preceding paragraph of this Complaint as if fully restated.

26. Plaintiff acquired its interest in the Coolidge Property in reliance on the Zoning Ordinance and published Green Zone, for the sole purpose of obtaining marihuana licensure in the City.

27. Plaintiff therefore acquired its interest in the Coolidge Property with the distinct and reasonable investment-backed expectation

that the Property would be treated consistent with its zoning classification.

28. Because the Matrix essentially redefines the Zoning Ordinance (and the Green Zone) by awarding 19 points only to applicants based on *certain properties* within the Green Zone, the City used the Matrix to effectively rezone the Coolidge Property, creating essentially a subclass of the Green Zone for properties that will earn applicants points, to the exclusion of Plaintiff's property within the Green Zone as defined by the ordinance.

29. The Matrix thus creates a second green zone within the Green Zone, meaning that, by using the Matrix in evaluating applications, the City effectively rezoned the Coolidge Property without due process.

30. Moreover, the City's scoring of applications based on the Matrix renders Plaintiff's ability to compete for licensure an impossibility because, even with perfect scores for every other Matrix criteria, the most points Plaintiff could ever obtain without the 19 points under the proposed site location rubric would be 296.

31. The City has therefore effectuated a taking of the Coolidge Property in fact, or by inverse condemnation.

32. Plaintiff is therefore entitled to just compensation for the substantial reduction in value of the Coolidge Property caused by the City's unconstitutional, illegal and arbitrary actions.

33. Plaintiff has also suffered damages as a direct and proximate result of the City's unconstitutional, illegal and arbitrary actions.

WHEREFORE, Plaintiff requests a judgment awarding it just compensation, in addition to damages for the lost value of a licensed operations in an amount to be determined, and any and all other relief this Court deems equitable and just under the circumstances.

## COUNT II
## VIOLATION OF THE MICHIGAN ZONING ENABLING ACT

34. Plaintiff incorporates each preceding paragraph of this Complaint as if fully restated.

35. By effectively rezoning the Coolidge Property without following the procedures set forth under the Michigan zoning enabling act ("ZEA"), M.C.L. 125.3101 *et seq*., the City plainly violated state law.

36. Therefore, the Matrix is invalid to the extent it is used to rezone real property, like the Coolidge Property.

WHEREFORE, Plaintiff seeks an order from this Court declaring the Matrix invalid as applied against Plaintiff because it constitutes an unduly and wrongfully enacted zoning ordinance. Plaintiff further seeks an injunction enjoining the City from using the Matrix.

Respectfully submitted,

BUTZEL LONG, P.C.

By: /s/ Darius Dynkowski
Darius Dynkowski (P52382)
Louis F. Ronayne (P81877)
150 West Jefferson Ave., Suite 100
Detroit, 48226
(313) 225-5313
dynkowski@butzel.com
ronayne@butzel.com
Attorneys for Plaintiff

Dated: April 28, 2022

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BDE WARREN, LLC, a Michigan limited liability company,

Plaintiff,

-v-

CITY OF BERKLEY,

Defendant.

Case No.

Hon.

Mag.

**JURY DEMAND**

---

BUTZEL LONG, P.C.
Darius Dynkowski (P52382)
Louis F. Ronayne III (P81877)
150 West Jefferson Ave., Suite 100
Detroit, 48226
(313) 225-5313
dynkowski@butzel.com
ronayne@butzel.com
Attorneys for Plaintiff

---

Plaintiff demands a jury trial with respect to all issues triable of right by a jury.

Respectfully submitted,

BUTZEL LONG, P.C.

By: /s/ Darius Dynkowski
Darius Dynkowski (P52382)
Louis F. Ronayne (P81877)
150 West Jefferson Ave., Suite 100
Detroit, 48226
(313) 225-5313
dynkowski@butzel.com
ronayne@butzel.com
Attorneys for Plaintiff

Dated: April 28, 2022